EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Universal Insurance Company y otro<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | Certiorari<br><br>2023 TSPR 24<br><br>211 DPR ___ |

Número del Caso:  CC-2022-0172


Fecha:  7 de marzo de 2023


Tribunal de Apelaciones:

        Panel V


Oficina del Procurador General:

        Hon. Fernando Figueroa Santiago
        Procurador General


        Lcdo. Omar Andino Figueroa
        Subprocurador General


        Lcda. María Astrid Hernández Martín
        Procuradora General Auxiliar


Abogado de la parte recurrida:

        Lcda. Keila M. Ortega Casals


Materia:  Confiscaciones – Ausentes las circunstancias contempladas en la Ley Uniforme de Confiscaciones de 2011, según enmendada por la Ley Núm. 287-2018, la figura del impedimento colateral por sentencia no puede ser invocada en un procedimiento de impugnación de confiscación como fundamento para obtener un dictamen sumario contra el Estado.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Universal Insurance Company y otro<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | CC-2022-0172 | *Certiorari* |

**El Juez Asociado señor Rivera García emitió la Opinión del Tribunal**

En San Juan, Puerto Rico, a 7 de marzo de 2023.

Por años esta Curia se ha enfrentado ante una interrogante persistente en nuestro ordenamiento, a saber, **la procedencia de la figura del impedimento colateral por sentencia en las acciones para impugnar una confiscación**. Como es conocido, nuestras decisiones durante la década pasada no han producido un dictamen mayoritario y, en su defecto, los tribunales de nuestra jurisdicción se han visto precisados a resolver estas controversias sin el beneficio de un precedente vinculante. **Hasta el día de hoy**.

Amparados en el **ordenamiento estatutario vigente**, resolvemos que, **ausente las circunstancias** contempladas en la Ley Uniforme de Confiscaciones de 2011, *infra*, **según fuera enmendada y aclarada por la Ley Núm. 287-2018**, *infra*, **la figura del impedimento colateral por sentencia no puede**

**ser invocada en un procedimiento de impugnación de confiscación, como fundamento para obtener un dictamen sumario contra el Estado**. Veamos.

**I**

El 1 de diciembre de 2019, Universal Insurance Company y Popular Auto (recurridas) instaron una *Demanda* ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, en la cual impugnaron una confiscación efectuada por el Estado. El objeto confiscado era un vehículo marca Jeep, modelo Patriot, año 2015, con tablilla IWL-524.[1] Dicho vehículo estaba gravado por Popular Auto mediante un contrato de venta condicional y asegurado por Universal Insurance Company contra el riesgo de una confiscación.[2]

Según surge del expediente, el 20 de septiembre de 2019, el Estado ocupó el referido vehículo por, presuntamente, haber sido utilizado en violación al Artículo 4(E) de la Ley Núm. 253-1995, Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, *infra*, y el Artículo 215 del Código Penal de Puerto Rico, *infra*.[3] Consta, además, que el automóvil fue inspeccionado para fines de inventario y fue identificado como "ocupado para investigación".[4] Posteriormente, el 10 de octubre de 2019, se emitió una *Orden de Confiscación*.[5]

---

[1] *Demanda*, Apéndice del *Certiorari*, pág. 69.
[2] Íd.
[3] *Notificación de Confiscación*, Apéndice del *Certiorari*, pág. 72.
[4] *Inventario de Vehículo*, Apéndice del *Certiorari*, pág. 140.
[5] *Orden de Confiscación*, Apéndice del *Certiorari*, pág. 111.

Ahora bien, en conexión con estos hechos, el 24 de septiembre de 2019, se presentaron dos (2) denuncias contra el Sr. Juan R. Tirado Díaz (señor Tirado Díaz) por alegadas infracciones a las disposiciones penales previamente reseñadas.[6] En síntesis, los hechos alegados ocurrieron para el 4 de septiembre de 2019 y exponían un alegado uso del vehículo ocupado sin el pago de los derechos anuales (marbete).[7] No obstante, estas **denuncias no prosperaron** y el Tribunal de Primera Instancia, Sala Municipal de Bayamón, hizo una **determinación de no causa para arresto en ambos cargos**.[8]

Retornando al pleito de epígrafe, surge que el Estado contestó la demanda de impugnación y sostuvo que la confiscación debía presumirse legal y que le correspondía a las aquí recurridas el peso de la prueba para derrotar la legalidad de esta.[9] Posteriormente, se suscitó una controversia respecto a la notificación de la confiscación y si esta se había cursado oportunamente.[10] Dicha interrogante fue resuelta a favor del Estado.[11]

---

[6] *Denuncias*, Apéndice del *Certiorari*, págs. 134-137.

[7] Íd.

[8] Íd. Las denuncias contra el señor Tirado Díaz fueron clasificadas bajo los alfanuméricos BY2019CR01097-1 y BY2019CR01097-2. Además, surge del expediente que existía otro caso contra el señor Tirado Díaz, el caso criminal D LE2019M0110, Pueblo de Puerto Rico v. Juan R. Tirado Díaz, el cual fue desestimado al amparo de la Regla 64 de Procedimiento Criminal, 34 LPRA Ap. I, R. 64. No surge de los autos información ulterior sobre este último procesamiento.

[9] *Contestación a Demanda*, Apéndice del *Certiorari*, pág. 77.

[10] Véanse *Moción Solicitando Sentencia Sumaria por Notificación Tardía*, Apéndice del *Certiorari*, págs. 93-98 y *Réplica a Moción de Sentencia Sumaria*, Apéndice del *Certiorari*, págs. 105-07.

[11] Véase *Resolución* del 9 de abril de 2021, Apéndice del *Certiorari*, págs. 114-16. Surge de los autos que el vehículo fue ocupado para fines de investigación el 20 de septiembre de 2019 y fue

Concluidos estos trámites, las recurridas presentaron una *Moción Solicitando [que] se Dicte Sentencia Sumaria por Impedimento Colateral por Sentencia*. En lo pertinente, resaltaron que los cargos contra el señor Tirado Díaz no prosperaron.[12] Así pues, concluyeron que el delito que motivó la confiscación no fue cometido y que, por consiguiente, no existía un nexo entre un acto delictivo y el objeto confiscado.[13] Por tanto, sostuvieron que se había configurado la doctrina de impedimento colateral por sentencia.[14]

En sentido contrario, el Estado presentó una *Oposición a Solicitud de Sentencia Sumaria* y destacó que el procedimiento de confiscación es uno independiente de cualquier otro proceso penal, civil o administrativo contra el dueño o poseedor de los bienes ocupados.[15] Además, sostuvo que el resultado de todo caso criminal por los mismos hechos resulta irrelevante en el caso civil.[16] A su entender, lo pertinente, es que existe una presunción de legalidad y corrección de la confiscación que en este caso no había

---

oficialmente confiscado el 10 de octubre de 2019. Así las cosas, la notificación de la confiscación fue cursada el 1 de noviembre de 2019. De este modo, la investigación y la orden de confiscación se completaron dentro del término de noventa (90) días que establece el Artículo 13 de la Ley Uniforme de Confiscaciones de 2011, 34 LPRA sec. 1724j. Similarmente, la notificación de la confiscación fue remitida dentro de los treinta (30) días posteriores a la conclusión de la investigación y la emisión de la orden de confiscación, tal y como dispone la disposición precitada.

[12] *Moción Solicitando se Dicte Sentencia Sumaria por Impedimento Colateral por Sentencia*, Apéndice del Certiorari, pág. 148.

[13] Íd., pág. 149.

[14] Íd., pág. 154.

[15] *Oposición a Solicitud de Sentencia Sumaria*, Apéndice del *Certiorari*, pág. 165.

[16] Íd., pág. 167.

sido derrotada.[17] Finalmente, **argumentó que aquí se encuentra ausente una adjudicación expresa que haya determinado que el bien confiscado no fue utilizado en la comisión de algún delito**.[18]

Al cabo de estos trámites, el foro primario dictó una *Resolución* en la cual declaró sin lugar la solicitud de sentencia sumaria instada por las recurridas. Expuso que es el demandante quien tiene que demostrar que se cometió un delito en o con la propiedad confiscada.[19] De este modo, "el mero hecho de haberse desestimado la acción criminal por sí solo no es suficiente para rebatir la presunción de que la confiscación fue correcta".[20] Así, concluyó que en este caso no hay prueba aun que estableciera la falta de responsabilidad del señor Tirado Díaz.[21] Particularmente, recalcó que no surgía la razón por la cual la acción criminal contra el señor Tirado Díaz no prosperó.[22]

Inconforme con este desenlace, Universal Insurance Company acudió mediante petición de *Certiorari* ante el Tribunal de Apelaciones. En lo pertinente, alegó que el foro primario había errado al no haber aplicado la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia.[23] Por su parte, el Estado, representado por

---

[17] Íd.

[18] Íd., pág. 176.

[19] *Resolución* del 12 de octubre de 2021, Apéndice del *Certiorari*, pág. 66.

[20] Íd.

[21] Íd.

[22] Íd.

[23] *Petición de Certiorari* ante el Tribunal de Apelaciones, Apéndice del *Certiorari*, pág. 38.

la Oficina del Procurador General, compareció en oposición mediante un *Escrito en Cumplimiento de Orden*.[24]

Examinadas las posturas de ambas partes, el foro intermedio expidió el auto y revocó el dictamen del Tribunal de Primera Instancia. Razonó, que nuestra doctrina reconoce que el desenlace del procedimiento civil está íntimamente relacionado a la causa criminal.[25] Además, expuso que, aunque la acción de confiscación fuera una civil, esta, al igual que un proceso criminal, tiene el fin de penalizar un delito.[26] Por tanto, **razonó que, ante la determinación de no causa y la desestimación de los cargos, el vehículo confiscado se considera no utilizado en actividad criminal alguna**.[27] En suma, concluyó que procedía la aplicación de la doctrina de impedimento colateral y la disposición sumaria del caso en favor de las recurridas.[28]

Tras fallar en su intento de obtener una reconsideración de dicho dictamen, el Estado recurre ante nos mediante *Certiorari*. En su escrito, le imputa al Tribunal de Apelaciones la comisión del siguiente error:

> Erró el Honorable Tribunal de Apelaciones al aplicar la doctrina de impedimento colateral por sentencia aun cuando no hubo adjudicación *expresa* en el proceso penal que se celebró por los mismos hechos que dieron lugar a la confiscación, en la cual se determinase que el bien confiscado no fue utilizado en la comisión de algún delito.

---

[24] *Escrito en Cumplimiento de Orden* ante el Tribunal de Apelaciones, Apéndice del *Certiorari*, pág. 184.
[25] *Sentencia* del 19 de enero de 2022, Apéndice del *Certiorari*, pág. 18.
[26] Íd.
[27] Íd.
[28] Íd., pág. 19.

El 27 de mayo de 2022, tras examinar el recurso, expedimos el auto. Posteriormente, las partes presentaron sus respectivos alegatos, reiterando, en esencia, los planteamientos antes esbozados.

Perfeccionado el recurso ante nuestra consideración, procedemos a su adjudicación.

## II

### A. Confiscación civil o *In Rem*

Nuestra doctrina establece que la confiscación es el acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos.[29] Ante la seriedad que supone dicho acto gubernamental, hemos enfatizado que **la confiscación representa una privación de la propiedad que debe satisfacer las garantías mínimas del debido proceso de ley**.[30] Además, **representa una excepción al mandato constitucional que prohíbe que el Estado tome propiedad privada para fines públicos sin justa compensación**.[31]

Sin duda, el fin de este tipo de procedimiento es evidente, pues ciertamente la confiscación opera como una **sanción penal adicional** contra los criminales.[32] Aun así, a

---

[29] Véanse: Coop. Seg. Múlt. *et als*. v. ELA *et al.*, 2022 TSPR 77, 209 DPR _ (2022); Figueroa Santiago *et als*. v. ELA, 207 DPR 923, 929 (2021); Reliable v. Depto. Justicia y ELA, 195 DPR 917 (2016).

[30] Reliable v. Depto. Justicia y ELA, *supra*, págs. 924-25.

[31] Coop. Seg. Múlt. v. ELA, 180 DPR 655, 662-63 (2011).

[32] Véanse: Doble Seis Sport v. Depto Hacienda, 190 DPR 763, 784 (2014); MAPFRE v. ELA, 188 DPR 517, 525 (2013).

lo largo de nuestra historia, hemos reconocido que la clasificación del procedimiento de la confiscación como una acción civil o criminal, precisa de un mayor análisis. Esto es así, pues, **nuestro ordenamiento reconoce dos (2) variantes de la confiscación: la confiscación *in personam* y la confiscación *in rem*.**[33]

La confiscación *in personam* se perfila como una acción de índole penal, pues se produce como resultado de un veredicto de culpabilidad en un procedimiento criminal.[34] En ese caso, la confiscación representa una parte de la sanción que se le impone al ofensor.[35] Por otra parte, la confiscación *in rem* parte de la premisa fundamental de que esta es una **acción distinta y separada de cualquier otro procedimiento penal, o sea, dirigido contra la persona**.[36] Es decir, esta acción, por ficción legal, se insta contra la cosa misma y no contra su dueño, poseedor, encargado u otra persona con interés legal sobre ella.[37]

Ahora bien, tanto nuestra doctrina, como la doctrina federal vinculante, reconocen que la mera designación de un procedimiento de confiscación como criminal o civil no resuelve la interrogante sobre su verdadera naturaleza. Por el contrario, ante la duda sobre el tipo de confiscación que ha de emplearse en una jurisdicción, es preciso recurrir

---

[33] Coop. Seg. Múlt. *et als.* v. ELA *et al.*, *supra*, pág. 8.
[34] Íd.
[35] Íd.
[36] MAPFRE v. ELA, *supra*, pág. 525.
[37] Íd.

a la sustancia del procedimiento estatuido. Como es de esperarse, la contestación a esta interrogante tiene importantes efectos prácticos. Ciertamente, ante una confiscación de naturaleza criminal, se activan las garantías que ofrece nuestro ordenamiento en estas instancias. Por el contrario, no ocurre esto cuando estamos ante una confiscación civil.

Más aún, para entender este análisis, debemos recurrir a la jurisprudencia vinculante del Tribunal Supremo federal, el cual ha tenido repetidas ocasiones para considerar este dilema. Particularmente, debemos examinar las siguientes opiniones: United States v. Ward, 448 US 242 (1980); United States v. One Assortment of 89 Firearms, 465 US 354 (1984) y United States v. Ursery, 518 US 267 (1996).

En United States v. Ward, *supra*, el Tribunal Supremo federal consideró los elementos que resolverían la interrogante sobre si un estatuto, que dispone cierta penalidad, es de naturaleza civil o criminal. En primer lugar, **debe determinarse si la legislatura ha expresado de manera expresa o implícita la preferencia por una designación u otra**.[38] No obstante, aún habiéndose designado la penalidad como civil, es necesario considerar si esta es tan punitiva, en su propósito o en sus efectos, como para derrotar esta intención.[39] Respecto a esto, el Máximo Foro federal ha dispuesto que solo **la prueba más clara** podría

---

[38] United States v. Ward, *supra*, pág. 248.
[39] Íd., págs. 248-49.

proporcionar los fundamentos para derrotar la constitucionalidad de un estatuto bajo dicha pretensión.[40]

A su vez, en United States v. One Assortment of 89 Firearms, *supra*, el Tribunal Supremo federal se encontró ante un estatuto de confiscaciones cuya naturaleza civil fue cuestionada. De entrada, al recurrir a los elementos discutidos en *Ward*, se expuso que **las confiscaciones *in rem* han sido vistas tradicionalmente como procedimientos civiles**, donde la jurisdicción se asume a partir de la ocupación de un objeto físico.[41] Al examinar el estatuto en controversia, se determinó que el fin de este era uno de naturaleza **remedial**.[42] En particular, el estatuto buscaba **mitigar** el comercio indiscriminado de las armas de fuego.[43] Según entendió la Corte Suprema federal, mantener las armas de fuego fuera de las manos de vendedores no autorizados era un fin remedial y no punitivo.[44]

Finalmente, tanto One Assortment of 89 Firearms*, supra,* como United States v. Ursery, *supra*, despejaron cualquier duda sobre la interacción entre los procedimientos de confiscación y la protección constitucional contra la doble exposición. Sencillamente, a menos que la sanción ——en este caso una confiscación—— fuera diseñada como un castigo y su efecto fuera de tal

---

[40] Íd., pág. 249.
[41] United States v. One Assortment of 89 Firearms, *supra*, pág. 363.
[42] Íd., pág. 364.
[43] Íd.
[44] Íd.

nivel que el procedimiento se tornara esencialmente criminal en su naturaleza, **la doble exposición no es posible**.[45]

Establecido lo anterior, reiteramos, que para que una confiscación *in rem* o civil sea procedente deben satisfacerse dos (2) requisitos primordiales. Primeramente, **debe existir prueba suficiente y preponderante de que se ha cometido un delito**.[46] Segundo, debe demostrarse que existe un **nexo entre la comisión del delito y la propiedad confiscada**.[47] Además, dada la naturaleza independiente de la acción civil de la confiscación, esta puede instarse antes de que se presente una acción criminal o, incluso, antes de que se haya obtenido un veredicto de culpabilidad o absolución.[48] **Lo crítico, es que el Estado demuestre que la propiedad confiscada se utilizó en una actividad delictiva**.[49]

### B. Ley Uniforme de Confiscaciones de 2011

El análisis anterior nos confirma que la confiscación *in rem* o civil, cuando se rija por los parámetros previamente expuestos, cumple cabalmente con las protecciones constitucionales que imperan en nuestra jurisdicción. En términos prácticos, esto implica que **el**

---

[45] Véanse: <u>United States v. Ursery</u>, *supra*, págs. 277-78; <u>United States v. One Assortment of 89 Firearms</u>, *supra*, pág. 362.
[46] <u>Figueroa Santiago *et als*. v. ELA</u>, *supra*, pags. 929-30.
[47] Íd.
[48] Véanse: <u>Doble Seis Sport v. Depto Hacienda</u>, *supra*, págs. 784-85; <u>Coop. Seg. Múlt. v. ELA</u>, *supra*, pág. 668.
[49] Íd.

**diseño e instrumentación de este procedimiento recae decididamente en manos del Poder Legislativo**. A esos fines, la Asamblea Legislativa de Puerto Rico aprobó nuestro estatuto rector en materia de confiscaciones, la Ley Uniforme de Confiscaciones de 2011, según enmendada.[50]

Surge de la exposición de motivos de dicha medida, que la confiscación representa un **disuasivo a la actividad criminal** por el temor que infunde la pérdida de la propiedad.[51] Habida cuenta de ello, la ley provee las normas que han de regir el proceso de la confiscación con el fin de que este sea uno expedito, justo y uniforme.[52] Además, reitera que el procedimiento de confiscación, creado en virtud de dicha ley, es uno "que garantiza el debido proceso de ley a todo dueño de bienes confiscados".[53]

En lo pertinente a lo que hoy nos ocupa, **la ley dispone expresamente la determinación de la Asamblea Legislativa sobre la naturaleza del procedimiento de confiscación estatuido en Puerto Rico**. De esta manera, "se sostiene y reafirma la **naturaleza *in rem* de las confiscaciones, independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza**".[54] (Énfasis suplido). Además, de la exposición de motivos surge sin

---

[50] Ley Núm. 119-2011, 34 LPRA secs. 1724 *et. seq.*
[51] 2011 (Parte 2) Leyes de Puerto Rico 1761.
[52] Íd.
[53] Íd., pág. 1762.
[54] 34 LPRA sec. 1724 nota.

ambages lo que la Asamblea Legislativa entiende que implica esta naturaleza independiente. En concreto,

> [l]os procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que se acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. Esto debido a que la acción civil se dirige contra la cosa en sí misma, en general, **la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil**.[55] (Énfasis suplido).

De otra parte, con el fin de asegurar el debido proceso a toda persona que ostente un interés propietario en el objeto confiscado, la Ley Uniforme de Confiscaciones de 2011, *supra*, viabiliza un procedimiento mediante el cual se permite impugnar las confiscaciones efectuadas por el Estado. A esos efectos, el Artículo 15 de la Ley Uniforme de Confiscaciones de 2011 dispone que aquellas personas que hubieran sido notificadas de una confiscación, y que demuestran ser dueñas de la propiedad incautada, pueden instar una demanda contra el Gobierno de Puerto Rico.[56]

El referido artículo también establece que las demandas de impugnación deben instarse dentro del término de treinta (30) días a partir de la notificación de que el objeto ha sido confiscado. Además, y de extrema pertinencia en estos casos, es necesario puntualizar que "**se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado**

---

[55] 2011 (Parte 2) Leyes de Puerto Rico 1762-63.
[56] 34 LPRA sec. 1724l.

**a los mismos hechos**".[57] (Énfasis suplido). En conjunto con ello, **la ley le asigna al demandante "el peso de la prueba para derrotar la legalidad de la confiscación**".[58] (Énfasis suplido).

### C. Impedimento colateral por sentencia y la Ley Uniforme de Confiscaciones de 2011

Con esto en mente, nos adentramos en el tema medular que enmarca el dictamen que hoy emitimos. Esto es, la relación, si alguna, que debe guardar el procedimiento civil de la confiscación, lo que incluye su correspondiente impugnación, con el desenlace de cualquier otra acción penal por los mismos hechos. Reiteradamente, tal discusión nos ha conducido a esgrimir la aplicación en estos casos de la doctrina de impedimento colateral por sentencia. No obstante, como es de conocimiento, en los pasados años este tema ha promovido un vigoroso debate entre los miembros pasados y presentes de esta Curia.[59] Por ello, aclaramos, que **la norma que hoy pautamos se ciñe estrictamente al derecho vigente**. Esto es, al **texto actual de la Ley Uniforme de Confiscaciones de 2011**, *supra*, según enmendada.

Todo estudio de este tema necesariamente debe partir de un repaso de los elementos medulares de la doctrina de impedimento colateral por sentencia. En principio, dicho

---

[57] Íd.

[58] Íd.

[59] Véanse las opiniones de conformidad, concurrencia y disidencia emitidas en los siguientes casos: MAPFRE *et al*. v. ELA, 2022 TSPR 80, 209 _ (2022); Mapfre *et al*. v. ELA, 198 DPR 88 (2017); Bco. Bilbao Vizcaya *et al*. v. ELA, 195 DPR 39 (2016) y Mapfre Praico Ins. *et al*. v. ELA, 195 DPR 86 (2016).

precepto legal es una matización de la doctrina de cosa juzgada, la cual persigue el fin de los litigios y garantiza la certidumbre y seguridad de los derechos declarados.[60] En igual sentido, el impedimento colateral "tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes".[61]

En términos prácticos, el impedimento colateral por sentencia "impide que en un pleito posterior se relitiguen cuestiones de hecho o derecho necesarias para la adjudicación de un pleito anterior, independientemente de que haya sido por la misma causa de acción o por otra distinta, siempre que sea entre las mismas partes o sus causahabientes".[62] Para que aplique, es necesario que concurran los siguientes requisitos: **(1) que el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) que se haya litigado en un pleito anterior; (3) que se haya determinado mediante una sentencia final, y (4) que la determinación haya sido esencial para el fallo**.[63]

Partiendo de estas premisas, la Asamblea Legislativa emprendió en un ejercicio aclaratorio con el fin de precisar decididamente la aplicación de dicha doctrina en los

---

[60] Beníquez v. Vargas, 184 DPR 210, 225 (2012).
[61] Presidential v. Transcaribe, 186 DPR 263, 277 (2012).
[62] Marrero Rosado v. Marrero Rosado, 178 DPR 476, 497 (2010).
[63] Íd.

procedimientos de impugnación de confiscación. A tal efecto, se aprobó la Ley Núm. 247-2018,[64] en virtud de la cual se enmendó puntualmente el texto de la Ley Uniforme de Confiscaciones de 2011, *supra*.

De entrada, conviene examinar las expresiones que denotan el propósito cardinal de nuestros legisladores al aprobar este estatuto. Así, se reafirma que "**[l]a confiscación es un proceso civil que va dirigido contra la cosa**, bajo la premisa que dicho bien fue utilizado en la comisión de un delito...".[65] (Énfasis suplido) Ahora bien, se reconoce que "**dicha premisa ha creado confusión en cuanto a su alcance, resultando esto en un debate continuo en los tribunales de la Isla. Por ello, esta legislación busca aclarar la intención legislativa al respecto, para así ponerle fin a esta controversia**".[66] (Énfasis suplido).

Expuesto lo anterior, la Ley Núm. 247-2018 enmendó el Artículo 8 de la Ley Uniforme de Confiscaciones de 2011, *supra*, el cual citamos *in extenso*:

> [s]e dispone que, **no será de aplicación en los procesos de confiscación, la doctrina de Impedimento Colateral por Sentencia en las siguientes instancias**:
>
> a) Cuando el acusado haya hecho alegación de culpabilidad;
> b) cuando el acusado se someta a un programa de desvío;
> c) cuando el acusado fallezca antes o en medio del proceso que se esté llevando a cabo contra su persona;
> d) **en ausencia de alguna adjudicación expresa en otro proceso penal, civil o administrativo, que se celebre por los mismos hechos que dieron lugar a la**

---

[64] 2018 LPR (Parte 3) 2916-2922.
[65] Íd., pág. 2917.
[66] Íd.

**confiscación, en la cual se determine que el bien confiscado no fue utilizado en la comisión de algún delito**; y

     e) en cualquier otra instancia que no se cumplan con los requisitos de la doctrina.[67] (Énfasis suplido).

Sin duda, el lenguaje anterior aclara las instancias en las cuales procede la aplicación de la doctrina de impedimento colateral por sentencia en los casos donde se impugna una confiscación civil. Si bien el legislador optó por expresarse en un sentido negativo, el efecto no es otro que el de delimitar taxativamente las circunstancias que permitirían o impedirían la invocación de esta doctrina en un procedimiento judicial al amparo de la Ley Uniforme de Confiscaciones de 2011, *supra*.

### D. Moción de sentencia sumaria

Finalmente, es harto conocido que nuestro ordenamiento procesal civil reconoce el uso y valor del mecanismo de la sentencia sumaria como vehículo para asegurar la solución justa, rápida y económica de un caso.[68] Tal herramienta posibilita la pronta resolución de una controversia cuando no se requiera la celebración de un juicio en su fondo. Ahora bien, para que proceda este mecanismo es necesario que de los documentos no controvertidos surja que no hay un controversia real y sustancial sobre los hechos del caso.[69] Puesto de otra manera, que solo resta aplicar el derecho.[70]

---

[67] 34 LPRA sec. 1724e.

[68] Véanse: Meléndez González v. M. Cuebas, 193 DPR 100 (2015); SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013); Ramos Pérez v. Univisión, 178 DPR 200 (2010).

[69] Ramos Pérez v. Univisión, *supra*, pág. 214.

[70] Íd.

Según hemos expresado, **un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable**".[71] (Énfasis suplido). Para que exista una controversia sobre los hechos, esta debe ser real, es decir, cualquier duda es insuficiente para derrotar una moción de sentencia sumaria.[72]

Por su parte, la Regla 36 de Procedimiento Civil,[73] exige ciertos requisitos de forma para la moción que se inste y su respectiva oposición. Así, la parte que sostenga que "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes" debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible.[74] Además, tanto la moción como su oposición deben presentar

> una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal.[75]

Si el cúmulo de la evidencia demuestra que en efecto no hay **controversia sustancial respecto a algún hecho esencial y pertinente**, el tribunal deberá dictar sentencia sumaria **si procede como cuestión de derecho**.[76] Por ende, no

---

[71] Meléndez González v. M. Cuebas, *supra*, pág. 110; Ramos Pérez v. Univisión, *supra*, pág. 213.
[72] Ramos Pérez v. Univisión, *supra*, págs. 213-14.
[73] 32 LPRA Ap. V, R. 36.1.
[74] Íd.
[75] 32 LPRA Ap. V, R. 36.3.
[76] Íd.

debe dictarse sentencia sumaria cuando: (1) existan hechos esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no hayan sido refutadas; (3) surja una controversia real sobre algún hecho esencial o material de los propios documentos que acompañan la moción, o (4) no proceda como cuestión de derecho.[77]

Expuesto el marco jurídico que delimita la controversia que hoy nos ocupa, resolvemos de conformidad.

### III

De entrada, reiteramos nuestro afianzamiento en el ordenamiento vigente y en el interés primordial de dar fiel cumplimiento a la intención de la Asamblea Legislativa cuando esto no incida en los valores constitucionales que como Curia venimos obligados a custodiar. Veamos.

Según examinamos, los hechos de este caso no distan en forma sustancial de aquellos que han ocupado a este Tribunal en ocasiones previas. Nuevamente, nos enfrentamos ante una invocación de la doctrina de impedimento colateral por sentencia, como fundamento para disponer ─sumariamente─ de una acción en la cual se impugna una confiscación civil. Como ha sido la costumbre, tal reclamación se funda en el hecho de que la acción penal contra el presunto autor de los hechos delictivos, por diversos fundamentos, no prosperó.

---

[77] *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 595. (2013).

Ahora bien, un examen detenido del ordenamiento vigente confirma que nuestra Asamblea Legislativa, en un ejercicio válido de sus prerrogativas constitucionales, dispuso el tratamiento que se le debe dar a circunstancias como las de autos. Sencillamente, **al confrontarse con alguna de las circunstancias que detalla el Artículo 8 de la Ley Uniforme de Confiscaciones de 2011**, *supra*, **el tribunal primario tiene que descartar la aplicación de la doctrina de impedimento colateral por sentencia** en un procedimiento impugnatorio de una confiscación.

La lógica de este razonamiento es sólida, pues nuestro estudio del derecho revela que dentro del propósito remedial que ostenta nuestro ordenamiento de confiscaciones, el interés latente del Poder Legislativo es el de asegurar la agilidad y eficacia de los procedimientos confiscatorios. Consecuentemente, la validez de toda confiscación sigue dependiendo de la presencia de los elementos reseñados. Esto es, (1) la prueba suficiente y preponderante de que se ha cometido un delito y (2) la existencia de un nexo entre la comisión del delito y la propiedad confiscada.

De otra parte, la fiel aplicación del ordenamiento vigente tiene el efecto irremediable de obstaculizar la procedencia del mecanismo de la sentencia sumaria, para derrotar una confiscación, **cuando su único fundamento es la doctrina de impedimento colateral por sentencia y no se manifiesta alguna circunstancia constitutiva excepcional**.

Lo anterior tiene un efecto decisivo en casos análogos a este.

Como sabemos, **el elemento neurálgico de toda adjudicación sumaria es la ausencia de controversias sobre los hechos esenciales y materiales del caso**. El escollo que encuentra un planteamiento como el que aquí levantaron las recurridas es que, **si no cuentan con prueba de que existe una excepción a la inaplicabilidad de la doctrina de impedimento colateral por sentencia, el desenlace de la acción penal por los mismos hechos es totalmente impertinente**. De este modo, tal hecho no podría ser el fundamento legal de una moción de sentencia sumaria, pues realmente **no se trata de un hecho esencial y material**. Por el contrario, **se trata de un hecho que el legislador ha dispuesto expresamente que no debe ser objeto de consideración en el caso**.

Del expediente de marras, **no surge una adjudicación expresa en otro procedimiento que establezca que el bien confiscado no fue utilizado en la comisión de algún delito**. Tampoco surge circunstancia alguna que motive una desviación de la norma general que establece la Ley Uniforme de Confiscaciones de 2011, según enmendada, *supra*, la cual prohíbe la aplicación de la doctrina de impedimento colateral por sentencia. En dicho contexto, actuó incorrectamente el Tribunal de Apelaciones al revocar la determinación bien fundada del foro primario. Evidentemente, las recurridas no cumplieron con el deber

que les impone la ley de derrotar la presunción de legalidad y corrección que asiste a una confiscación civil. No podían prevalecer ——sumariamente—— cuando su único fundamento legal proviene de una doctrina impertinente.

Por tanto, **resolvemos, que ausente evidencia conducente a derrotar la presunción de legalidad y corrección de una confiscación civil, no puede esta impugnarse por medio de una solicitud de sentencia sumaria que se funde ——exclusivamente—— en la doctrina de impedimento colateral por sentencia**. Claro está, el litigante que impugne una confiscación podría prevalecer, en la eventualidad que cuente con prueba de que se ha configurado una excepción a la prohibición que surge de la Ley Uniforme de Confiscaciones de 2011, *supra*.

## IV.

Por los fundamentos previamente expuestos, se revoca la *Sentencia* dictada por el Tribunal de Apelaciones y se reinstala la *Resolución* emitida por el Tribunal de Primera Instancia. Continúense los procedimientos con la norma aquí pautada.

Se dictará Sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Universal Insurance Company y otro<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | CC-2022-0172 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de marzo de 2023.

Por los fundamentos previamente expuestos en la *Opinión* que antecede, la cual se hace formar parte de esta *Sentencia*, se revoca la *Sentencia* dictada por el Tribunal de Apelaciones y se reinstala la *Resolución* emitida por el Tribunal de Primera Instancia. Continúense los procedimientos con la norma aquí pautada.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con opinión escrita a la cual se une la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Colón Pérez disiente con opinión escrita. La Jueza Asociada señora Pabón Charneco está conforme y emite las expresiones siguientes:

> "Por varios años este Tribunal ha estado igualmente dividido sobre la procedencia y aplicación de la doctrina de impedimento colateral por sentencia en casos sobre impugnación de confiscaciones. Durante este tiempo, he mantenido una postura consistente sobre las instancias en las que se permite el uso de esta doctrina para la impugnación de una confiscación civil o in rem. Véase Mapfre Preferred Risk Insurance Co. & Popular Auto v. ELA de PR, 209 DPR 910 (2022) (Sentencia); Mapfre v. ELA, 198 DPR 88 (2017) (Sentencia); Bco. Bilbao Vizcaya et al. v. ELA, 195 DPR 39 (2016) (Sentencia). Esto, debido a que con la aprobación de la Ley Núm. 119-2011, infra, no se incluyó disposición estatutaria alguna que prohibiera la aplicación de la doctrina de

impedimento colateral por sentencia en los procedimientos de confiscaciones. Así las cosas, ante las constantes controversias sobre el presente asunto, he reiterado que no nos compete, como parte de nuestra labor judicial, suplir un silencio estatutario y prohibir el uso de la referida doctrina.

No obstante, la Asamblea Legislativa, mediante la Ley Núm. 287-2018, el 29 de diciembre de 2018, tomó la iniciativa de enmendar el Art. 8 de la Ley Núm. 119-2011 y dispuso de forma clara y precisa las instancias en las que no aplicaría la doctrina de impedimento colateral por sentencia en los procesos de confiscación. Específicamente y de particular relevancia para el presente caso, la enmienda dispuso que no se aplicaría la doctrina "[…]en ausencia de alguna adjudicación expresa en otro proceso penal, civil o administrativo, que se celebre por los mismos hechos que dieron lugar a la confiscación, en el cual se determine que el bien confiscado no fue utilizado en la comisión de algún delito". 34 LPRA sec. 1724e.

Sin embargo, esta disposición no es de aplicación retroactiva. Consecuentemente solamente en aquellos casos cuyos hechos ocurrieran con posterioridad al 29 de diciembre de 2018, nos corresponde aplicar el citado artículo según enmendado por la Asamblea Legislativa. Por lo tanto, dado que los hechos que nos ocupan ocurrieron el 20 de diciembre de 2019, posteriormente a la enmienda de la Ley Núm. 119-2011, lo correcto era no aplicar la doctrina de impedimento colateral por sentencia en el presente caso. Así las cosas, en el futuro, en aquellos casos que los hechos sean con posterioridad a la enmienda realizada por la Ley Núm. 287-2018, aplicaré el citado artículo conforme a lo dispuesto por la Asamblea Legislativa".

La Jueza Presidenta Oronoz Rodríguez disiente y emite las expresiones siguientes:

"Disiento por los mismos fundamentos esbozados en mi Opinión Disidente en MAPFRE Preferred Risk Insurance Co. v. ELA, 209 DPR 910 (2022). Independientemente de que los hechos del caso de epígrafe se hayan desarrollado bajo la vigencia de la enmienda de 2018 a la Ley Uniforme de Confiscaciones, Ley Núm. 119-2011, 34 LPRA sec. 1724 et seq., ello no disipa la estrecha relación existente entre

una causa criminal —que inició por razón de una confiscación in rem— y una causa civil de impugnación de confiscación. Al igual que en MAPFRE v. ELA, supra, en el caso de epígrafe se realizó una confiscación de un vehículo de motor por la presunta ocurrencia de conducta delictiva. Al procesar criminalmente al alegado ofensor, se determinó que no había causa para arresto. Ante ello —y al amparo de la postura que defendí en aquel pronunciamiento—, procedía disponer del proceso de impugnación de la confiscación que se incoó y declarar nula la incautación practicada. En vista de la estrecha relación de ambos procesos, aplicando la doctrina de impedimento colateral por sentencia correspondía resolver sumariamente que la incautación no se realizó conforme a derecho —pues, como cuestión de umbral, no se probó la comisión de delito alguno— y decretar su invalidez.

Más allá de lo anterior, no se puede perder de perspectiva que la confiscación in rem, aunque se catalogue de naturaleza civil, tiene un fin punitivo que busca penalizar la conducta delictiva presuntamente ocurrida. Coop. Seg. Mult. v. ELA, 180 DPR 655 (2011). Esto, similar al propósito del procedimiento criminal que se inicie. Ahí yace el vínculo íntimo reseñado. Íd. Por ello, resulta muy cuestionable validar una confiscación cuando en el procedimiento criminal paralelo no se probó conducta criminal alguna por parte de una persona que es quien, en efecto, tiene la capacidad de delinquir. No sujetar el procedimiento civil de impugnación a la causa criminal relacionada, en esta tesitura, es impráctico. Íd.

Según se ha concebido la confiscación in rem, esta se ejecuta contra aquellos bienes que fueron utilizados en la comisión de algún delito. 34 LPRA sec. 1724f. Para sostener esta incautación independientemente de la inocencia o culpabilidad de la persona que se valió del bien para un fin delictivo, se esgrime —al amparo de una ficción legal— que el referido bien es el "ofensor primario". Suárez v. ELA, 162 DPR 43, 54 (2004). Es decir, que este en sí mismo delinquió. Cónsono con lo que expresé en MAPFRE v. ELA, supra, estimo que ello es un contrasentido, pues solo las personas pueden incurrir en conducta delictiva y, si esta no se estableció, necesariamente no se puede refrendar la confiscación del bien. Habida

cuenta de que este criterio no prevaleció, no puedo suscribir la Opinión mayoritaria.

Por los fundamentos expuestos, hubiese confirmado la determinación del Tribunal de Apelaciones".

María I. Colón Falcón
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Universal Insurance Company y otro<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | CC-2022-0172 | <u>Certiorari</u> |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 7 de marzo de 2023.

"**<u>Hasta el día de hoy</u>**",[1] lamentablemente, la Mayoría de este Tribunal continúa lacerando la protección consagrada en las Constituciones de Puerto Rico y Estados Unidos que garantiza que ninguna persona será privada de su propiedad sin el debido proceso de ley y en ausencia de una justa compensación.

Dándole la espalda a esos postulados, este Tribunal resuelve en el día de hoy que una persona que obtuvo un resultado favorable en el procedimiento penal no puede utilizar este hecho como fundamento suficiente para que se concluya sumariamente que la confiscación civil fue contraria a Derecho. Lo que es peor, la interpretación mayoritaria valida, incluso, que ni tan siquiera la

---

[1] (Negrillas y énfasis suplido en el original). <u>Opinión mayoritaria</u>, pág. 1.

absolución criminal sea suficiente para derrotar la confiscación por la vía sumaria, sino que es necesario, además, que en la causa criminal se haya realizado una adjudicación expresa a los efectos de que el bien en cuestión no fue utilizado en la comisión de delito alguno.

En cambio, tal y como he expuesto consecuentemente, afirmo que, independientemente de lo que se disponga estatutariamente, la confiscación en ausencia de una condena penal constituye un impedimento colateral por sentencia en el pleito civil en el cual se impugna la incautación efectuada por el Gobierno. Ello pues, sujetar a un juicio plenario la confiscación civil de un bien lícito presupone sostener de manera _prima facie_ que ese "bien", por sí mismo, puede ser culpable de la comisión de un acto delictivo. **No puedo avalar este derrotero que engrandece insosteniblemente una ficción en el campo de las confiscaciones civiles e ignora el Derecho Constitucional aplicable.** Me explico.

**I**

**A.**

Reiteradamente, este Tribunal ha definido la confiscación como aquel acto a través del cual el Gobierno ocupa e inviste para sí todo derecho de propiedad sobre los bienes utilizados en la comisión de ciertos delitos. Flores Pérez v. ELA, 195 DPR 137, 146 (2016) (citando a Doble Seis Sport v. Depto. Hacienda, 190 DPR 763, 784 (2014); Díaz Ramos v. E.L.A. y otros, 174 DPR 194, 202 (2008); Del Toro Lugo v. E.L.A., 136 DPR 973, 980-981 (1994)).

La confiscación de bienes utilizados en una actividad delictiva tiene dos (2) modalidades. La primera, la <u>in personam</u>, que es de naturaleza penal, se lleva a cabo como parte del proceso criminal y constituye una sanción adicional a la pena para el presunto autor del delito, en caso de encontrársele culpable. <u>Mapfre v. E.L.A</u>, 188 DPR 517, 525 (2013). La segunda, la <u>in rem</u>, va directamente contra la cosa misma por el mal uso que se le ha dado y no contra la persona con interés legal sobre la propiedad en cuestión. Íd. La confiscación en su modalidad civil parte de la ficción jurídica de que el bien confiscado en sí mismo es el ofensor primario y que, este, como medio o producto de la ofensa, es merecedor de responsabilidad independientemente del autor del delito. <u>Bco. Bilbao Vizcaya et al. v. ELA et al.</u>, 194 DPR 116, 156 (2015) (Voto particular disidente del Juez Asociado Señor Estrella Martínez).

Al determinar si procede una confiscación civil, los tribunales deben evaluar si existe: (1) prueba suficiente y preponderante de que se cometió un delito, y (2) un nexo entre la comisión del delito y la propiedad confiscada. Véase, <u>Doble Seis Sport. v. Depto. Hacienda</u>, supra, pág. 784. <u>Suárez v. E.L.A.</u>, 162 DPR 43, 52 (2004); <u>Del Toro Lugo v. ELA</u>, supra, pág. 983. Claro está, es al Gobierno y no a la parte que impugna la incautación a quien le corresponde demostrar que se cometió un delito y el nexo con la propiedad confiscada. <u>Rodríguez Ramos v. ELA</u>, 174 DPR 194, 203 (2008). De no establecerse lo anterior, el bien confiscado mantiene

su naturaleza inocente y, por tanto, la confiscación civil es improcedente.

**B.**

Como es conocido, en nuestro ordenamiento la confiscación civil es instaurada a través de la Ley uniforme de confiscaciones de 2011, Ley Núm. 119-2011, 34 LPRA secs. 1724-1724w (Ley de Confiscaciones). El Art. 9 de la Ley de Confiscaciones, supra, dispone que estará sujeta a ser confiscada:

> **[T]oda propiedad** que resulte, sea producto o se utilice, **durante la comisión** de delitos graves y **de aquellos delitos menos graves en los que por ley se autorice la confiscación** […].[2]

**Nótese que lo determinante es que se haya cometido un delito, lo cual necesariamente exige que así se pruebe —más allá de duda razonable— en el correspondiente procedimiento criminal.**

No empece lo anterior, hoy la Mayoría se ancla en el Art. 8 de la Ley de Confiscaciones, supra, según enmendado por la Ley Núm. 287-2018, para concluir que la parte que impugna una confiscación civil está impedida de utilizar la doctrina de impedimento colateral por sentencia como fundamento para recobrar por la vía sumaria el bien incautado, si en el proceso penal que se celebre por los mismos hechos no se realiza una adjudicación expresa a los

---

[2](Negrillas suplidas). 34 LPRA sec. 1724f.

efectos de que el bien confiscado no fue utilizado en la comisión de algún delito.[3]

Según adelanté, discrepo vehemente de esta conclusión. Veamos, entonces, los fundamentos que orientan mi disenso.

## II

Históricamente, este Tribunal ha condicionado el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito que da base a la confiscación. Véase, entre otros, Downs v. Porrata, Fiscal, 76 DPR 611 (1964); Carlo v. Srio. de Justicia, 107 DPR 356 (1978); Del Toro Lugo v. E.L.A., supra; First Bank, Univ. Ins. Co. v. E.L.A., 156 DPR 77 (2002); Suárez v. E.L.A., supra; Ford Motor v. E.L.A., 174 DPR 735 (2008) y Díaz Morales v. Depto. de Justicia, 174 DPR 956 (2008) (Per curiam); Coop. Seg. Múlt. v. E.L.A., infra; Figueroa Santiago

---

[3]La disposición aludida dispone, en lo pertinente, lo siguiente:

> [N]o será de aplicación en los procesos de confiscación, la doctrina de impedimento colateral por sentencia en las siguientes instancias:
>
> [...]
>
> d) en ausencia de alguna adjudicación expresa en otro proceso penal, civil o administrativo, que se celebre por los mismos hechos que dieron lugar a la confiscación, en la cual se determine que el bien confiscado no fue utilizado en la comisión de algún delito.

34 LPRA sec. 1724e.

et als. v. ELA, 207 DPR 923 (2021).[4] Ello ha sido así por razón de que el resultado favorable en el proceso penal es suficiente para derrotar la presunción de legalidad y corrección de la confiscación efectuada. **Máxime, ante el hecho de que la Ley de Confiscaciones, <u>supra</u>,** si bien reconoce que la confiscación civil es un proceso independiente al de la acción penal, **no contiene un lenguaje que desvincule la confiscación de la comisión de un delito para hacer posible tal pretensión.**[5] Ello cobra mayor importancia ante el hecho de que la confiscación civil tiene un amplio componente punitivo por lo que debemos interpretar restrictivamente su alcance. <u>Centeno Rodríguez v. E.L.A.</u>, 170 DPR 907, 913 (2007).

A tenor con lo anterior, correspondía que hoy resolviéramos que el vehículo Jeep Patriot 2015 confiscado por el "alegado uso […] sin el pago de los derechos anuales (marbete)"[6], tiene que regresársele al Sr. Juan R. Tirado Díaz por razón de que las "**<u>denuncias no prosperaron</u>** y el

---

[4]Para una exposición sucinta de lo resuelto en cada uno de los casos precitados, véase, <u>Cooperativa de Seguros Múltiples y otro v. ELA y otros</u>, 209 DPR 796, 820-821 (2022) (Opinión disidente del Juez Asociado Señor Estrella Martínez); <u>Bco. Bilbao Vizcaya v. ELA</u>, 194 DPR 116, 160-164 (2015) (Voto particular disidente del Juez Asociado Señor Estrella Martínez.

[5]Véase, esc. 2 (haciéndose referencia a 34 LPRA sec. 1724f).

[6]<u>Opinión mayoritaria</u>, pág. 3.

Tribunal de Primera Instancia […] hizo una **determinación de no causa para arresto en ambos cargos**".[7]

Entiéndase, en esta controversia, la determinación de no causa advino final y firme, por lo que no existe procedimiento penal alguno relacionado con el bien lícito incautado. **En ese sentido, tal determinación final y firme de no causa que obtuvo el Sr. Juan R. Tirado Díaz en el delito que habilitó la incautación, hace imposible que se pruebe el segundo de los requisitos exigidos para validar la confiscación civil. Es decir, no existe un <u>nexo</u> entre la <u>comisión</u> del delito y el vehículo confiscado.**[8] Por tanto, tal y como unánimemente resolvió el Tribunal de Apelaciones, procedía declarar con lugar la demanda de impugnación de confiscación y ordenar la devolución del vehículo de motor confiscado.

Sin embargo, la Mayoría de este Tribunal opta por tomar el camino contrario y continúa disociando irrazonablemente la acción confiscatoria civil de la criminal bajo el pretexto estatutario de que ahora la Ley de Confiscaciones, <u>supra</u>, impide que se utilice el resultado del proceso penal como razón suficiente para derrotar sumariamente la presunción de corrección y legalidad de la confiscación civil.

---

[7](Negrillas y énfasis suplidos en el original). Íd.

[8]Recuérdese, al determinar la validez de una confiscación civil, los tribunales deben evaluar si existe: (1) prueba suficiente y preponderante de que se cometió un delito, y (2) **un nexo entre la comisión del delito y la propiedad confiscada.** Véase, <u>Doble Seis Sport. v. Depto. Hacienda</u>, supra; <u>Suárez v. E.L.A.</u>, supra; <u>Del Toro Lugo v. ELA</u>, supra.

En cambio, sostengo que la conexión inseparable entre ambos procesos va más allá de la etiqueta "civil" e "independiente" dispuesta en la Ley de Confiscaciones, supra. Asimismo, esta trasciende lo que la Asamblea Legislativa codifique en relación con la doctrina de impedimento colateral por sentencia y su aplicabilidad en la esfera civil. De este modo, interpretamos integralmente nuestro ordenamiento jurídico sin abstraernos de las garantías constitucionales individuales.

Cónsono con este proceder, en Coop. Seg. Múlt. v. E.L.A., 180 DPR 655 (2011), este Tribunal resolvió que la extinción de la acción penal hacía improcedente el proceso de confiscación civil. Esta conclusión tomó en cuenta el carácter cuasicriminal de la Ley de Confiscaciones, supra, **y, más importante aún, la necesidad constitucional de vincular el resultado de la acción penal al proceso de confiscación civil**. Específicamente, tal raciocinio se fundamentó en que:

> **Al amparo de nuestras interpretaciones constitucionales**, y cónsono con la normativa federal vigente, **hemos vinculado el resultado del proceso civil de confiscación al desenlace de la causa criminal contra la persona imputada del delito a base del cual se justifica la confiscación**.[9]

Nótese que la vinculación del proceso civil de confiscación a lo que finalmente ocurra en la causa penal,

---

[9](Negrillas y énfasis suplidos). Íd., pág. 680.

según resuelto en <u>Coop. Seg. Múlt. v. E.L.A.</u>, supra, resulta en extremo importante, pues:

> En primer lugar, porque analiza de forma grupal las decisiones previas del Tribunal Supremo sobre el asunto <u>e</u> <u>identifica</u> una línea consistente: **el vínculo férreo entre la acción penal y el proceso civil de confiscación. Es decir, dicha [O]pinión anuncia** la existencia de una norma que yacía callada en varias decisiones previas y la articula expresamente. En segundo lugar, **no cabe duda [de] que esta norma es de naturaleza constitucional. Por tanto, no depende únicamente de la voluntad legislativa.**[10]

Tal y como destaqué en <u>Bco. Bilbao Vizcaya v. ELA</u>, supra, la confiscación civil está atada al resultado de la causa criminal aun en aquellos casos en que la absolución criminal no sea en los méritos. Íd., pág. 164. Lo anterior "'no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sentencia, sino de <u>excepciones a la independencia</u> del proceso <u>in rem</u> fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito'". Íd., (citando a <u>Coop. Seg. Múlt. v. E.L.A.</u>, supra, pág. 676). **Ello, sobre todo, dadas las garantías constitucionales locales y federales que están presentes en los procesos de confiscación.**[11]

---

[10] (Negrillas suplidas y énfasis suplido en el original). J. Farinacci Fernós, <u>Derecho constitucional</u>, 86 Rev. Jur. UPR 662, 680 (2017).

[11] Al respecto, véase, <u>Timbs v. Indiana</u>, 139 S. Ct. 682 (2019) (estableciéndose, en el contexto de confiscaciones civiles, la extensión de la Octava Enmienda a los estados por virtud de la Decimocuarta Enmienda); <u>Austin v. United</u>

Y es que la confiscación sin más de un bien naturalmente lícito vulnera, además, la garantía constitucional de la presunción de inocencia.[12] Para evitar tal fricción, resulta indispensable que se concluya que la falta de una condena extingue la acción civil confiscatoria.[13] **Interpretar lo contrario, implica una revocación <u>sub silentio</u> de nuestros precedentes y, más importante aún, presenta serios problemas constitucionales en la práctica.**

De hecho, recientemente así lo adelanté en <u>Cooperativa de Seguros Múltiples y otro v. ELA y otros</u>, 209 DPR 796, 812 (2022) (Opinión disidente del Juez Asociado Señor Estrella Martínez). Específicamente, allí alerté que la modificación estatutaria en la que hoy se ampara la Mayoría no alteraba la norma de que la falta de una condena penal priva la confiscación civil y vulnera múltiples garantías constitucionales.[14]

---

<u>States</u>, 509 US 602 (1993) (afirmándose que la Octava Enmienda, la cual prohíbe los castigos crueles e inusitados, aplica en los casos civiles de confiscación por razón del propósito punitivo característico de este último); <u>One 1958 Plymouth Sedan v. Com. of Pa.</u>, 380 US 693 (1965) (aplicándose las salvaguardas constitucionales contra los registros irrazonables en casos criminales a un proceso de confiscación civil). Refiérase, además, a los casos citados en la Sec. II, págs. 5-6, junto con el esc. 4, de esta <u>Opinión disidente</u>.

[12]<u>Coop. Seg. Mult. v. E.L.A.</u>, <u>supra</u>, pág. 679.

[13]Íd., pág. 681.

[14]Para una exposición y análisis sobre la preocupación de la Convención Constituyente con respecto al carácter punitivo de las confiscaciones y la separación ficticia entre ambos procesos, véase, <u>Cooperativa de Seguros Múltiples y otro v. ELA y otros</u>, supra, págs. 818-820.

A esos fines, es menester citar in extenso los
fundamentos que enmarcaron mi postura:

> **Esta enmienda, introducida por la Ley
> Núm. 287-2018, no altera nuestra
> conclusión de que la falta de
> presentación de cargos o la absolución
> en un proceso criminal tiene el efecto
> de que no proceda la confiscación civil
> de un bien inherentemente lícito.
> Nótese, pues, que lo añadido preceptúa
> que el proceso civil de confiscación
> podrá llevarse a cabo y culminarse antes
> de que se acuse, declare culpable o
> absuelva al acusado. Por otra parte, y
> muy a pesar de lo dispuesto a los efectos
> de que la culpabilidad o inocencia del
> acusado no deberá tomarse en cuenta en
> el proceso de confiscación civil,
> entendemos que esto, igualmente,
> establece la indispensabilidad de que
> haya un proceso penal.** Sin embargo,
> adelantamos que la enmienda realizada se
> ciñe principalmente a la aplicabilidad
> de la doctrina de impedimento colateral
> por sentencia. **Mas, en la práctica,
> potencialmente trasciende la realidad de
> lo que es válido constitucionalmente y,
> particularmente,                    nuestros
> pronunciamientos jurisprudenciales al
> respecto.**[15]

Así pues, debido a la naturaleza cuasicriminal de las
confiscaciones civiles, y por razón de las implicaciones que
tienen sobre los derechos constitucionales de la ciudadanía,
estas no deben ser favorecidas por los tribunales en
escenarios donde no exista una condena penal. Coop. Seg.
Múlt. v. E.L.A., supra, pág. 688 (citas omitidas). Solo así
se cumple con el principio de que las confiscaciones deben

---

[15](Negrillas suplidas y negrillas suplidas en el
original). Íd., pág. 818 (esc. 6).

interpretarse restrictivamente "y de forma compatible con la justicia y los dictados de la razón natural". Íd.[16]

En consecuencia, distinto a lo que concluye la Opinión mayoritaria, ratifico que, ante un resultado favorable en el procedimiento criminal, procede la resolución por la vía sumaria de la impugnación de la confiscación realizada por el Gobierno. Ello es así, en vista de que si el Gobierno falló en probar en la esfera penal la conducta delictiva que motivó la incautación, está ausente el nexo entre la comisión del delito y la propiedad incautada, elemento esencial para su validez. Por tanto, no existe justificación alguna en Derecho que impida que una parte demandante prevalezca sumariamente en la acción civil impugnatoria de la confiscación.[17]

---

[16]Máxime, cuando no cabe duda que estas confiscaciones son civiles en su forma, pero punitivas en su naturaleza. Figueroa Santiago et als. v. ELA, supra, pág. 937 (Opinión disidente del Juez Asociado Señor Estrella Martínez).

[17]Sobre este particular, resulta apropiado reproducir lo que expresé en Bco. Bilbao Vizcaya v. ELA, supra:

> A esos efectos, si procediera la confiscación luego de un resultado favorable en el caso criminal, el Estado estaría utilizando su poder punitivo para castigar a un ciudadano por la comisión de un delito aunque éste no se hubiera cometido. **A todas luces, en la medida en que el procedimiento civil no es conforme a [D]erecho, el Estado estaría incautando propiedad privada sin que ésta se haya utilizado en actividad criminal.**

(Negrillas suplidas y énfasis suplido en el original). Íd., pág. 172.

En definitiva, reafirmo que en aquellos casos en que se extingue la acción penal relacionada con los mismos hechos que dieron lugar a la confiscación, y al acreditarse tal hecho en la acción impugnatoria de confiscación civil, solo restaba aplicar el Derecho. Dado que no se probó la comisión de un delito, eso, indudablemente, debería conducirnos al camino de liberar lo confiscado sin que fuese necesario la celebración de un juicio.[18]

### III

**Hoy se siguen confiscando las esperanzas de que este Tribunal se proyecte como garante de los derechos constitucionales de la ciudadanía.** Ello, muy a pesar de que el precepto normativo que debe regir es claro e infranqueable: **un resultado favorable en la causa penal es suficiente para que se decrete sumariamente la invalidez de la confiscación civil, sin perjuicio de lo que se disponga estatutariamente**. Únicamente de este modo se evita favorecer

---

[18]En función de que se obligará a continuar litigando la improcedencia de la confiscación, enfatizo que el foro correspondiente deberá realizar un análisis de **relación o utilidad** entre lo confiscado y la conducta delictiva que motiva la confiscación. Si cumple con ese análisis, deberá evaluar, en segundo lugar, si existe **proporcionalidad** entre el valor de la propiedad con respecto a la gravedad del delito alegadamente cometido. De este modo, se preserva la máxima en contra de la imposición de multas excesivas garantizado por las Constituciones de Puerto Rico y Estados Unidos. Para una exposición y análisis sobre el particular, véase, mi disenso en Cooperativa de Seguros Múltiples y otro v. ELA y otros, supra, págs. 824-825. **Adelanto que, tomando en cuenta que aquí la alegada conducta delictiva se ciñe a la presunta utilización de un vehículo sin marbete, la confiscación de la Jeep Patriot 2015 potencialmente vulnera la cláusula constitucional contra las multas excesivas antes aludida.**

desmedidamente al Gobierno en la confiscación de propiedad con un estándar menor y sin la plena observancia de las garantías que se activan en los procesos penales.

**Reitero, nuestros precedentes y las garantías constitucionales aplicables exigen que, tras una determinación favorable en el proceso penal, se determine <u>sin más</u> que la confiscación en el proceso civil punitivo es improcedente.** Toda vez que bajo este escenario se opta por someter a un juicio en su fondo a quien impugna la confiscación, y con ello se categoriza <u>prima facie</u> al bien confiscado como coautor de un crimen, **disiento**.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Universal Insurance Company y
otro

      Recurridos

          v.

                              CC-2022-0172   *Certiorari*

Estado Libre Asociado de
Puerto Rico y otros

      Peticionarios

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 7 de marzo de 2023.

Hace aproximadamente un año atrás, en *Coop. Seg. Múlt. et als. v. E.L.A. et als.*, 2022 TSPR 77, 209 DPR __ (2022), desde la disidencia, sostuvimos que la ausencia de presentación de cargos criminales en contra de persona alguna, por hechos que motivaron la confiscación de determinada propiedad, invalidaba la acción confiscatoria del Estado sobre un objeto lícito. Allí razonamos que, "la ausencia de cargos criminales en contra de persona alguna no solo t[enía] el efecto de colocarnos ante un propietario o dueño del bien confiscado protegido por la presunción de inocencia, sino que también nos presenta[ba] una **falta de vínculo entre la propiedad confiscada y el delito cometido**, sumado a la naturaleza legal del objeto

confiscado". (Énfasis suplido). Véase, Opinión disidente de Colón Pérez en *Coop. Seg. Múlt. et als. v. E.L.A. et als.*, *supra*.

Hoy, en un asunto de similar naturaleza, le correspondía a los miembros de este Tribunal pasar juicio sobre si, habiéndose encontrado no causa para arresto en contra de determinada persona, por ciertos delitos que presuntamente motivaron la confiscación de un bien perteneciente a éste, procedía que el Estado privara a un ciudadano de su propiedad. Lamentablemente, una mayoría de mis compañeros y compañera de Estrado, nuevamente, toman la ruta equivocada y, en un juego de palabras, en esencia, vuelven a emplear *sub silentio* la ficción jurídica que plantea que *la cosa*, por sí sola, es autora del delito.

Al así hacerlo, -- en palabras sencillas --, erróneamente resuelven que la no determinación de causa por los delitos que motivaron la confiscación impugnada en el presente litigio no invalida automáticamente la acción confiscatoria del Estado sobre un objeto lícito. Lo anterior, pues, a su juicio, ello no es suficiente para derrotar la presunción de legalidad y corrección de una confiscación civil. Fallan malamente en dicha apreciación.

Y es que, independientemente que el presente litigio se trámite bajo la Ley Núm. 287-2018, 2018 Leyes de Puerto Rico (Parte 3) 2916-2922, la cual enmendó la Ley de Confiscaciones de 2011, 34 LPRA sec. 1724e, -- tal y como lo hicimos en

*Coop. Seg. Múlt. et als. v. E.L.A. et als.*, *supra*, --,
insistimos en que la ficción jurídica que automáticamente
hoy emplea una mayoría de este Tribunal, para arribar a su
conclusión, requiere que alguien sea el autor del delito que
da paso a la confiscación. **Es decir, "[a]lguien tiene que
utilizar la cosa delictiva"**. *Íd.* Ello no se probó aquí.

Como bien se recoge en los hechos que forman parte de
la Opinión que hoy emite esta Curia, en el presente caso hubo
una **adjudicación expresa**, por parte del Tribunal de Primera
Instancia, de no causa para arresto en contra de determinada
persona por ciertos delitos que presuntamente motivaron la
confiscación de un bien perteneciente a éste. En específico,
no se encontró causa para arresto en contra del señor Tirado
Díaz por la presunta violación al Artículo 4(e) de la Ley
253-1995 (Disposiciones Generales del Seguro de
Responsabilidad Obligatorio), 26 LPRA sec. 8053, Ley de
Seguro de Responsabilidad Obligatorio para Vehículos de
Motor, Ley Núm. 253-1995, 26 LPRA *et seq.,* y el Artículo 215
del Código Penal de Puerto Rico (Falsificación de licencias,
certificados y otra documentación), 33 LPRA sec. 5285,
delitos por los que le fue confiscado el vehículo de motor
perteneciente a éste. Dicho de otro modo, aquí no hubo
delito.

Ausente pues, ese **"vínculo entre la propiedad confiscada
y el delito cometido"**, y dada la histórica relación que
siempre ha existido entre el proceso criminal y el civil

asociado a litigios como estos, no se sostiene la confiscación realizada por el Estado del bien perteneciente al señor Tirado Díaz. (Negrillas suplidas). Opinión disidente de Colón Pérez en *Coop. Seg. Múlt. et als. v. E.L.A. et als.*, *supra*. En consecuencia, el error señalado por el Estado no se cometió.

Podían los aquí recurridos invocar, como efectivamente lo hicieron, ante los foros judiciales, la doctrina de impedimento colateral por sentencia, ello en aras de dar paso a su *Demanda* sobre impugnación de confiscación. Recordemos que la referida doctrina postula que su propósito es la economía procesal, particularmente, que una parte adversamente afectada por una determinación vuelva a relitigar su caso.

En específico, conforme a nuestro ordenamiento jurídico la doctrina del impedimento colateral por sentencia opera cuando un hecho esencial para el dictamen de una sentencia se determina como uno final y firme y dicha determinación es concluyente para un pleito subsiguiente entre las mismas partes, aunque se trate de acciones distintas. *Coop. Seg. Múlt. v. E.L.A.,* 180 DPR 655, 673 (2011); *Suárez v. E.L.A.,* 162 DPR 43, 59 (2004); *A & P Gen. Contractors v. Asoc. Caná*, 110 DPR 753, 763 (1981).[1] Tal es el caso de autos.

---

[1] Vale señalar que, en *Del Toro Lugo v. E.L.A.,* 136 DPR 973 (1994), al aplicar la aludida doctrina, resolvimos que no procedía la confiscación cuando hubo una determinación de no causa probable para acusar y la misma advino final y firme sin que el Estado hubiese acudido en alzada. *Íd.,* págs. 992-993. "*La determinación de no causa final y firme de un imputado constituye una **determinación judicial** que deja a éste libre,*

I.

Es, pues, por los fundamentos antes expuestos que enérgicamente disentimos.

Ángel Colón Pérez
Juez Asociado

---

*independientemente de si es una determinación en los méritos o no lo es".* (Negrillas suplidas)(Énfasis en el original). *Suárez v. E.L.A., supra*, pág. 56, citando a *Del Toro Lugo v. E.L.A., supra.*